# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

LINDA EASTER                                                              PLAINTIFF

v.                              No. 4:17CV00361 JLH

ARKANSAS CHILDREN'S HOSPITAL                            DEFENDANT

## OPINION AND ORDER

Linda Easter worked for the Arkansas Children's Hospital as a specialty nurse in the Neurosciences Center until October 3, 2016. Her job duties involved speaking on the phone with patients, insurance companies, and doctors. The hospital terminated her after she had been on leave for more than twelve weeks due to issues with her esophagus. She alleges that the hospital terminated her because of her race and because of her disability in violation of Title VII of the Civil Rights Act and the Americans with Disabilities Act. The hospital has moved for summary judgment.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

When Easter was three years old, she swallowed poison, which damaged her esophagus. She had a tracheotomy until she was nine years old but did not experience significant issues until 2004. In 2004, she developed cold-like symptoms and trouble swallowing. Easter underwent forty

different surgeries to correct these issues between 2004 and her termination. Easter typically scheduled the surgeries to allow her to recover over the weekend and return to work on Monday. Three surgeries, however, required extended time off. After a surgery in 2015, Easter took off from May through sometime in August. At some point after the 2015 surgery, Easter developed a persistent cough. She had surgery on July 1, 2016, to address the cough and was scheduled to be on leave pursuant to the Family Medical Leave Act through September 1, 2016. Easter's cough persisted and she was unable to return to work on September 1.

Easter then requested and was granted an additional week of personal leave. On September 8, 2016, her doctor sent the hospital a note stating that Easter would be "unable to perform her current line of work for an indefinite amount of time" due to "uncontrollable coughing spells" that were "refractory to any medical treatment." Document #8-1 at 71. Easter exhausted her FMLA leave on September 26, 2016. On September 30, the hospital asked Easter for an update on her medical status. Easter reported that she was still coughing and had fallen three times due to medication she was taking. Easter requested that the hospital allow her additional leave until it was determined when she would be able to return to work, presumably after consulting with a throat specialist on October 20. On October 3, 2016, Terri Songer, Easter's supervisor at the hospital, sent Easter a termination letter, which stated in part:

> Our records indicate your twelve (12) weeks of Family and Medical Leave were exhausted as of September 26, 2016. Your doctor has indicated that you have an ongoing need to be off of work due to your personal medical condition; however, we must release your position so we can hire a replacement. The effective date of your termination will be October 3, 2016.

Document #8-1 at 73.

2

Easter says that before the hospital terminated her, she requested another job in which her coughing episodes would not interfere. She says that she also requested to be placed on unpaid leave until she could see the throat specialist on October 20. In her deposition, Easter testified that when she requested to be placed on unpaid leave, she did not know how much time she would need off. Easter also testified that she did not see marked improvement in her condition until two or three weeks after seeing the throat specialist. She further testified that the throat specialist cleared her to return to work but she did not have a note from the specialist. After Easter filed a complaint with the Equal Employment Opportunity Commission and spoke with an investigator, the investigator reported the following on December 8, 2016:

> [Easter] is still having gastroparisis, allergens, and other ongoing issues. [Easter] still has irritable larynex [sic] syndrom. I asked her if she thought the doctors would say she could return to work and she says they haven't said anything about it, but she thinks she could. [Easter] hasn't been released.

Document #8-1 at 74.

Easter argues that the hospital violated the Americans with Disabilities Act when it terminated her without accommodating her condition. The act prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the act includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b)(5).

The *McDonnell Douglas* burden-shifting framework applies to Easter's disability discrimination claim. *See Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003). This

3

framework requires Easter to first establish a prima facie case by demonstrating that (1) she has a disability, or the employer thinks she has a disability, within the meaning of the act; (2) she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action as a result of her disability. *Id.* The second element requires Easter to show that she was qualified to perform the job, which involves a two step inquiry. *Id.* at 517. First, Easter must show that she meets the necessary prerequisites for the job, and, second, Easter must demonstrate that she can perform the essential functions of her job, with or without reasonable accommodation. *Id.* Easter need only "make a facial showing that reasonable accommodation is possible." *See Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999).

Assuming that Easter's medical condition rendered her disabled within the meaning of the act, she cannot make the required showing under the second element. Easter does not dispute that she was unable to perform the essential functions of her job without a reasonable accommodation. She argues instead that she could have performed the essential functions of her job if the hospital had accommodated her condition by allowing her to be placed on unpaid leave, "to handle the doctor's refills, or to perform some other job in the neurology clinic, until she was able to get a handle on the coughing." Document #20 at 13. It is undisputed that talking on the phone was an essential function of Easter's job.

Easter's request for additional leave amounted to a request for indefinite leave. She did not know when she would be able to return and perform essential functions of her job. And she asked that the hospital refrain from taking any action until she saw a throat specialist and it could be determined when she would be able to return to work. Meanwhile, the hospital had a note from her

doctor stating that Easter was "unable to perform her current line of work for an indefinite amount of time." Indefinite leave is not a reasonable accommodation. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016), *reh'g denied* (Aug. 15, 2016); *see also* 1 Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 895 (4th ed. 2007) (collecting cases in support of the proposition that "[c]ourts generally hold that indefinite leaves, or leaves with no proposed end date, are not reasonable and need not be granted").

Even if Easter's statement to the hospital could be construed as a request for leave until her medical appointment and no longer, she still cannot make the required showing under the second element. "[A] leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." *Hill v. Walker*, 918 F. Supp. 2d 819, 829-30 (E.D. Ark. 2013) (citations omitted). The question, then, is "whether a leave of absence for a definite term likely would have enabled [Easter] to achieve regular attendance at work." *McKinney v. Midland Sch. Dist.*, No. 1:13CV00038, 2015 U.S. Dist LEXIS 52222, *8 (E.D. Ark. Apr. 21, 2015). Any suggestion that Easter would have been able to return to work once she consulted with her doctor is belied by her own testimony that she did not see "marked improvement" until two to three weeks after seeing the throat specialist on October 20, 2016, as well as by the report by the EEOC investigator.

Easter's request that the hospital accommodate her by allowing her to handle medication refills is not a reasonable accommodation. Easter testified that she understood no position at the hospital consisted of only that duty. Document #8-1 at 41-42. Employers "need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." *Fjellestad*, 188 F.3d at 950. It is moreover unclear whether such a position would have been an accommodation.

5

Songer stated in her affidavit that a position that consisted entirely of filling prescriptions likely would have "involved even more talking on the phone than [Easter's] normal job duties." Document #8-2 at 3, ¶22.

Easter last states that the hospital should have accommodated her by allowing her to work in some other position at the hospital. While reassignment can be a reasonable accommodation under the act, Easter has failed to show that a vacant position existed. *See* 42 U.S.C. § 12111(9) (listing "reassignment to a vacant position" as a reasonable accommodation). For reassignment to be reasonable, "the disabled employee must be seeking an existing position within the company; the employer is not required to create a new position as an accommodation." *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000); *see also* Lindemann & Grossman, *supra*, at 909 ("Where there is no existing job vacancy, reassignment is not required."). Easter has provided no evidence that there was a vacant position with duties that she could perform. She states in her response to the hospital's statement of undisputed facts that she "looked on the [hospital's] website for comparable jobs" but "did not see any listing for RN3" and that she "continued to monitor the [hospital's] website until February 2017." Document #19 at 5, ¶22.

Nevertheless, Easter says that the hospital was required to engage in an interactive process to determine whether a reasonable accommodation was available before it terminated her. She cites a Fifth Circuit case requiring an employer to engage in an interactive process "once the employee presents a request for an accommodation." The Eighth Circuit, however, requires an employee to show that a reasonable accommodation was possible before a court can find that the employer failed in its obligation to participate in the interactive process. *Fjellestad*, 188 F.3d at 952 (applying four-part test from third circuit, one part of which requires the employee to show that she "could

6

have been reasonably accommodated but for the employer's lack of good faith"). Easter has not shown that a reasonable accommodation was possible. The hospital has therefore not neglected its obligation to engage in the interactive process.

Easter also argues that the hospital discriminated against her because of her race when it terminated her. The *McDonnell Douglas* framework also applies to Easter's race discrimination claim. *See Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 773 (8th Cir. 2016). Easter must first make a prima facie case showing that (1) she was a member of a protected class; (2) she met the hospital's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination based on race. *Id.* Easter can establish an inference of discrimination under the fourth element "in a variety of ways," such as by showing that non-black but similarly situated employees were treated more favorably, by showing biased comments by the hospital's decisionmaker, or by showing that the hospital's reason for termination was pretext for an unlawful reason. *Id.* at 774. Employees are similarly situated "when they are involved in or accused of the same offense and are disciplined in different ways." *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006) (citation omitted).

Easter says that two other employees were treated more favorably than she was. She claims that a white nurse who worked in cardiology and had cancer "would be off for long periods of time, longer than the twelve (12) weeks that was afforded under the FMLA, but he was not terminated." Document #20 at 16. Easter has not presented any evidence regarding how much additional leave he requested nor whether he requested indefinite leave. Consequently, Easter has not shown that this employee was similarly situated. The second employee Easter claims was similarly situated is a white nurse with dyslexia. The hospital allowed her "to go and get some training to assist her with

the problems that she was having, as an accommodation," but she "was later fired." Document #20 at 17. Assuming that it can be said this other nurse was treated more favorably than Easter, it cannot be said that she was similarly situated. No evidence shows that this nurse requested or was given indefinite leave. Easter cannot make a prima facie showing that the hospital discriminated against her on account of her race.

## CONCLUSION

For the foregoing reasons, the hospital's motion for summary judgment is GRANTED. Document #8. Linda Easter's complaint is dismissed with prejudice.

IT IS SO ORDERED this 3rd day of October, 2018.

*J. Leon Holmes*
———————————————
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE